IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| KRISTY CEBALLOS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 08-4108-JAR |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| COMMISSIONER OF ) | |
| SOCIAL SECURITY, ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER ADOPTING RECOMMENDATION AND REPORT**

The Commissioner of Social Security denied plaintiff's application for supplemental security income under the Social Security Act. Plaintiff sought review of the Administrative Law Judge's ("ALJ") decision and Magistrate Judge Gerald B. Cohn issued a Report and Recommendations (Doc. 18) on July 14, 2009, which recommended the Commissioner's decision be affirmed. This matter is currently before the Court on the plaintiff's Objection to Magistrate's Report and Recommendations (Doc. 19).

The standards the Court must employ when reviewing objections to a recommendation and report are clear.[1] Only those portions of a recommendation and report identified as objectionable will be reviewed.[2] The review of those identified portions is *de novo* and the Court must "consider relevant evidence of record and not merely review the magistrate judge's recommendation."[3]

---

[1] *See* 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72.

[2] *See Garcia v. City of Albuquerque*, 232 F.3d 760, 767 (10th Cir. 2000); Gettings v. McKune, 88 F. Supp. 2d 1205, 1211 (D. Kan. 2000).

[3] *See Griego v. Padilla*, 64 F.3d 580, 584 (10th Cir. 1995) (citation omitted).

Plaintiff objects to Judge Cohn's findings that the ALJ appropriately rejected Dr. Lear as a treating source, and thus did not give substantial weight to a medical opinion statement co-signed by a nurse practitioner and Dr. Lear. Plaintiff argues that the ALJ erred in not considering Dr. Lear and Nurse Practitioner Friesen as a team that qualified as a treating source, failed to explain his findings, and failed to recontact or otherwise explore the question of the nature of the working relationship between Dr. Lear and Ms. Friesen. Upon *de novo* review, the Court concludes that the ALJ did not err, and that the decision of the Commissioner should be affirmed.

First, a review of the record reveals that the ALJ fully explained his reasoning, and incorporated the correct legal standard, in finding that Dr. Lear was not a treating source and that Dr. Lear and Ms. Friesen together were not a treating source team. As the ALJ explained, there was no evidence that Dr. Lear ever treated plaintiff and no evidence that Dr. Lear and Ms. Friesen together treated plaintiff. Plaintiff was seen at COMCARE of Sedgwick County from November 27, 2006 through July 23, 2007. On November 27, 2006, Hem Sharma, a licensed social worker, performed a 60 minute intake assessment of plaintiff. Dr. Lear signed the Intake Summary, checking two boxes under the heading "Psychiatrist's Review." The first checked box stated "I have reviewed the above Intake Summary and Treatment Plan and approve it as written;" the second checked box stated "Refer for medication evaluation. Appointment date and time: Client is scheduled for medication evaluation with Dr. Williamson at center City on 12-8-06 at 10 a.m. She is scheduled to see Hem Sharma for an initial therapy session on 11-29-06 at 10 a.m. Client will benefit from case management services."

Thereafter, plaintiff was seen on December 8, 2006 by Dr. Williamson, who did a 60

2

minute "Medication Evaluation." Dr. Williamson saw plaintiff again on December 22 for a 30 minute "Medication Review."  Plaintiff was then seen by Dr. Shaikh on January 10, January 24, February 21, May 23 and June 13, 2007, each time for a 30 minute "Medication Review." Plaintiff was seen twice thereafter, by Sara Friesen, a Nurse Practitioner. Ms. Friesen did a 60 minute "Medication Review" on June 25, 2007 and a 20 minute "Medication Review" on July 23, 2007. On August 21, 2007, Ms. Friesen signed a "Diagnosis" document; but the record does not show that she actually saw plaintiff on that occasion. Finally, on September 4, 2007, Ms. Friesen and Dr. Lear both signed the medical opinion statement at issue in this appeal. There is no indication on this medical statement that Dr. Lear was signing as a reviewer, or supervisor, or as the treating physician.

In fact, the only time Dr. Lear's name appears in the medical records is on the medical opinion statement, and on the Intake Summary, which indicates that he has reviewed and approved the summary and that he is referring plaintiff to another doctor for a medication evaluation. Thereafter, two doctors examined and evaluated plaintiff, but there is no evidence that Dr. Lear examined and evaluated plaintiff at any time during her course of treatment at COMCARE. There are no treatment records that indicate that Dr. Lear was involved in plaintiff's treatment.

Moreover, there is no evidence that Dr. Lear actively supervised, consulted, or collaborated with the other doctors or Ms. Friesen. There is absolutely no evidence from which the ALJ or this Court can glean the nature of Dr. Lear's working relationship with Ms. Friesen. There is no evidence that Dr. Lear did anything more than sign off on the form Intake Summary, refer plaintiff for treatment, and sign off on the medical statement with Ms. Friesen.  In short,

under the body of case law that Magistrate Cohn ably discusses, there is no evidence supporting that Dr. Lear and Ms. Friesen provided a team based approach to the treatment of plaintiff.

For these reasons, the ALJ correctly determined that Dr. Lear neither individually, nor in partnership with Ms. Friesen, was a treating physician.  And, given that plaintiff failed her burden of producing evidence that Dr. Lear was a treating source, either individually or as a team with Ms. Friesen, the ALJ had no duty to recontact the medical providers or further investigate.

As Magistrate Judge Cohn explained, the opinions of  "other" medical sources, such as Ms. Friesen, should be given due consideration, and under some circumstances, the opinions of such "other" medical sources may be given more weight than treating sources whose opinions have been discredited.  But this is not the circumstance here.  Although the ALJ considered Ms. Friesen's opinion as to the severity and functional effect of impairment, the ALJ appropriately discounted her opinion because it was not supported by the record.  Ms. Friesen opined that plaintiff's mental disorders imposed marked limitations in many areas of mental functioning. But Ms. Friesen's opinion was based on her opinion that plaintiff's GAF scores were 55 for the year, and 52 most recently.  Yet a GAF score from 51-60 indicates moderate limitations, while a score in the range of 41-50 indicates severe limitations.  Moreover, from this Court's review of the record, during plaintiff's course of treatment at COMCARE, Dr. Williamson assessed GAF scores ranging from 65 to 70; and Dr.  Shaikh assessed GAF scores of 70, 60, 40 and 60, respectively, on the four occasions that he examined plaintiff.  Ms. Friesen assessed GAF scores of 50 on the two occasions that she examined plaintiff.  At best, it appears that but for one occasion, when Dr. Shaikh assessed plaintiff at 40, on all other occasions she was either borderline moderate or much better than moderate, according to the GAF scores.    For these

reasons, the Court concludes that the ALJ appropriately discredited Ms. Friesen's opinion on the severity of plaintiff's limitations, particularly when Ms. Friesen's assessment is mostly inconsistent with the scores the physicians assessed over the approximate 8 month course of treatment.

**IT IS THEREFORE ORDERED** that plaintiff's Objection to the Magistrate'sReport and Recommendations of Magistrate Judge Cohn (Doc. 19 ) shall be denied.

**IT IS FURTHER ORDERED** that the July 14, 2009 Report and Recommendations (Doc. 18) shall be adopted by the Court as its own.

**IT IS SO ORDERED.**

Dated:  August 12, 2009

 S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE